UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
FILED

APR 29 2021

NATHAN OCHSNER
CLERK OF COURT

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| v. | § | CRIMINAL NO. B-21-321 |
| SANTOS DE LEON-CARDENAS | § | |

**PLEA AGREEMENT**

COMES NOW the United States of America, by and through its attorneys, JENNIFER B. LOWERY, Acting United States Attorney for the Southern District of Texas, and the undersigned Assistant United States Attorney, Defendant, **SANTOS DE LEON-CARDENAS**, and Defendant's counsel, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and state that they have entered into an agreement, the terms and conditions of which are as follows:

1. Defendant agrees to plead guilty to **Count Two** of the indictment in this case. Count Two of the indictment charges Defendant with Harboring Certain Illegal Aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i). Defendant, by entering this plea agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment or proved to a jury or proven beyond a reasonable doubt.

2. As part of this agreement, the United States agrees to recommend credit for acceptance of responsibility; sentencing at the low end of guideline level that Defendant scores; and dismissal of the remaining counts. If Defendant pleads to Count II of the indictment within 45 days of his arrest, the Government also agrees to recommend a 2-

level downward departure pursuant to U.S.S.G. § 5K3.1, UNLESS Defendant has a criminal history category of IV or more or a prior 8 U.S.C. § 1324 conviction.

3. The statutory maximum penalty for each violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(i) is a maximum term of imprisonment of _10_ years; a fine of $250,000.00; and a period of supervised release not to exceed _3_ years. Defendant also acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release without credit for time already served on the term of supervised release prior to such violation. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

4. Defendant will pay to the United States District Court Clerk a special assessment in the amount of one-hundred dollars ($100.00) per count of conviction, as required in 18 U.S.C. § 3013(a)(2)(A). The defendant will pay to the United States District Court Clerk an additional special assessment in the amount of five-thousand dollars ($5,000.00) per count of conviction under 8 U.S.C. § 1324, as required in 18 U.S.C. § 3014(a)(5), unless Defendant is found by the Court to be indigent. The payment will be by certified check payable to United States District Court Clerk, Brownsville, Texas 78520.

5. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any is ordered.

6. Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.

7. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of Defendant's sentence, Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his sentencing.

8. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant also recognizes that if he is a naturalized citizen, pleading guilty may result in loss of citizenship. Defendant's attorney has advised Defendant of the potential immigration and/or denaturalization (loss of citizenship) consequences resulting from Defendant's plea of guilty.

9. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentence Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the <u>Sentencing Guidelines and Policy Statement</u>. Defendant further agrees to persist in that plea through sentencing, fully cooperate with

the United States, and not oppose the forfeiture of assets contemplated in this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

10.   Defendant understands and agrees that "fully cooperate" as used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the specific facts of the present offense. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)   Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)   Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)   Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)   Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

(f)   Should the recommended departure, <u>if any</u>, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

11. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. Defendant knowingly and voluntarily waives the right to appeal the conviction and the sentence imposed or the manner in which the sentence was determined. Additionally, Defendant is aware that 28 U.S.C. § 2255 affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to contest his conviction or sentence by means of any post-conviction proceeding. If Defendant files a notice of appeal following the imposition of sentence, the Government will seek specific performance of this provision. Nothing in the foregoing waiver of appellate and collateral review of rights shall preclude Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

In exchange for this agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

12. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office is a prediction, not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning

what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S.Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

13. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in paragraph 2 of this plea agreement.

14. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office; and

(d) to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and 18 U.S.C. § 3553(a).

15. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the

Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.

16. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.

    (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

    (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or

if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

18. This written plea agreement, consisting of nine pages, including the attached certifications of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant and his counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

19. Any modification of this plea agreement must be in writing and signed by all parties.

_____
Defendant

APPROVED:

_Edgardo Rodriguez_
Assistant U.S. Attorney

_____
Attorney for Defendant

8

## CERTIFICATION BY DEFENDANT

I have consulted with my counsel and fully understand all my rights with respect to the charge(s) pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and Policy Statements which may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and I voluntarily agree to it.

_Santos de Leon Cochress_                    _4-29-21_
Defendant                                     Date

## CERTIFICATION BY ATTORNEY

I have fully explained to Defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements and have fully explained to Defendant the provisions of those Guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_[signature]_                                 _4-29-21_
Counsel for Defendant                         Date

## PLEA PACKET MEMO

ASSIGNED AUSA: ED RODRIGUEZ
DEFENDANT: SANTOS DE LEON-CARDENAS
CASE #: B-21-321

Recommendation in exchange for Defendant's plea to **COUNT TWO and WAIVER OF APPEAL RIGHTS**, as outlined in the plea agreement: **credit for acceptance of responsibility; sentencing at the low end of guideline level that Defendant scores; and dismissal of the remaining counts. If Defendant pleas to Count Two of the indictment within 45 days of his arrest, the Government further agrees to recommend a 2-level downward departure pursuant to U.S.S.G. § 5K3.1, UNLESS Defendant has a criminal history category of IV or more or a prior 8 U.S.C. § 1324 conviction.**

## FACT SUMMARY SHEET

On March 22, 2021, United States Border Patrol agents with the Rio Grande Valley Sector Intelligence Unit, agents with Homeland Security Investigations, and constables from Cameron County Precint 2 conducted surveillance on Room 130 of the Rose Garden Inn in Brownsville, Texas, in response to information received regarding suspected illegal alien smuggling activity.

While surveilling, the officers observed a black minivan parked near Room 130. The black minivan matched the description given to the officers by an illegal alien apprehended by Border Patrol earlier that month who claimed he had been harbored in Room 130 of the Rose Garden Inn prior to his apprehension. Officers observed an individual later identified as the defendant, SANTOS DE LEON-CARDENAS, exit Room 130, enter the black minivan, and depart from the Rose Garden Inn. Officers followed the black minivan while also maintaining surveillance on Room 130.

Officers observed the defendant make a number of stops and then initiated a traffic stop. Upon questioning, the defendant stated that he was living with his wife and four minor children in Room 130. The defendant further stated that he had agreed to house seven (7) females in Room 130 as a favor to a friend. The defendant then gave officers consent to search Room 130 for harbored aliens.

After receiving the defendant's consent to search Room 130, the officers returned to the Rose Garden Inn. There, they knocked on the door to Room 130. The defendant's wife answered the door and granted the officers permission to enter and search the room.

While searching Room 130, the officers observed a closed door that they believed led to a closet. The officers opened the door, which connected Room 130 with Room 129, and discovered fifty-seven (57) illegal aliens being harbored inside Room 129, including five (5) unaccompanied minor children. The officers questioned all 57 illegal aliens and

they all stated that they were citizens of countries other than the United States and did not have permission to legally enter or remain in the United States.

The defendant was then arrested for harboring said aliens. Post-*Miranda*, the defendant admitted that he rented both Room 130 and Room 129 at the Rose Garden Inn. He further admitted that he harbored said aliens in Room 129 for approximately two (2) months in exchange for $100.00 per illegal alien and that he had harbored over two hundred (200) illegal aliens at his home, including the 57 aliens encountered on March 22, 2021. The defendant also stated that he was the one responsible for the health and wellbeing of the aliens harbored at his home.

When officers searched Room 129, they immediately observed that Room 129 was inadequate for the number of people being housed within it. Officers observed insects throughout the room, buckets full of trash, trash over most of the floor, and mold spores growing in the restroom. There was no furniture in the room. The officers observed that, due to the sheer number of aliens being housed within Room 129, there was insufficient space for any of the individuals inside to sit or lie down. The officers further observed human waste matter on numerous surfaces inside the room.

Nolberto Gonzalez-Villegas is a citizen and national of Mexico with no legal status to enter or remain in the United States. He was one of the 57 aliens encountered inside Room 129. Gonzalez-Villegas stated that on March 18, 2021, he was smuggled across the border into the United States from Mexico in exchange for $6,500.00. After being smuggled across, Gonzalez-Villegas stated that he was taken to Room 129 at the Rose Garden Inn, where he would be harbored until it was safe for him to be transported to his final destination within the United States. Gonzalez-Villegas positively identified the defendant as the caretaker of Room 129 in a photo lineup. Gonzalez-Villegas further stated that the defendant did not provide adequate living space for him and the other harbored aliens. According to Gonzalez-Villegas, he and the other aliens inside Room 129 were forced to take turns sleeping due to lack of space, had insufficient access to restroom facilities, and were kept in extremely hot conditions. Gonzalez-Villegas stated that the defendant ignored complaints regarding the inadeqaute living conditions.

Edgar Fabricio Reyes-Bonilla is a citizen and national of Honduras with no legal status to enter or remain in the United States. He was one of the 57 aliens encountered inside Room 129. Reyes-Bonilla stated that on March 18, 2021, he was smuggled across the border into the United States from Mexico in exchange for $5,800.00. After being smuggled across, Reyes-Bonilla stated that he was taken to Room 129 at the Rose Garden Inn, where he would be harbored until it was safe for him to be transported to his final destination within the United States. Reyes-Bonilla positively identified the defendant as the caretaker of Room 129 in a photo lineup. Reyes-Bonilla also confirmed the inadequate living conditions inside Room 129.

Defendant admitted that he knew said illegal aliens were illegally within the United States and that he knowingly harbored said aliens in furtherance of their illegal presence and conspired to do so for commercial advantage and private financial gain.

I agree the above factual summary accurately represents my involvement in the crime to which I am pleading guilty and that the proposed plea agreement accurately and fully describes my plea agreement with the government.

_____        _____
Counsel for Defendant                             Defendant
*Santos DeLeon Cardoas*

_____
*Edgardo Rodriguez*
Assistant United States Attorney